IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AIDA L. CRUZ OQUENDO<br><br>Plaintiff<br><br>vs<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Doral Bank<br><br>Defendant | CIVIL 15-1598CCC |
| AIDA L. CRUZ OQUENDO<br><br>Plaintiff<br><br>vs<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Doral Bank; BANCO POPULAR DE PUERTO RICO<br><br>Defendants | CIVIL 15-3176CCC |

**OPINION AND ORDER**

This nullification of contract action was removed from the Superior Court of Puerto Rico, Caguas Part, by the Federal Deposit Insurance Corporation, as receiver for Doral Bank ("FDIC-R"), on May 18, 2015. *See* d.e. 1. Plaintiff Aida L. Cruz Oquendo ("Cruz Oquendo") filed a complaint against Doral Bank ("Doral") in March 30, 2009 in Civil Case No. 15-1598 to nullify a mortgage agreement based on the claim that it included terms different from those requested by her and charged the bank with deception. *See* d.e. 9-1. Doral was closed by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico on February 27, 2015, whereupon FDIC-R was appointed Doral's receiver. *See* d.e. 1 at ¶ 2. On that same date, the FDIC-R and Banco Popular de Puerto Rico ("BPPR") entered into a Purchase and Assumption Agreement by virtue of which BPPR acquired certain assets from

CIVIL 15-1598CCC (consolidated       2
with Civil 15-3176CCC)

FDIC-R, which included Cruz Oquendo's mortgage loan. *See* d.e. 10-1 of Civil No. 15-1376. Cruz Oquendo subsequently filed a complaint against the FDIC-R and BPPR on December 30, 2015 (d.e. 1 of Civil No. 15-3176), claiming they are liable for Doral's purported fraud and seeking the rescission of the same mortgage agreement. That case was consolidated with Civil Case No. 15-1598 on December 16, 2016. *See* d.e. 13.

Before the Court are FDIC-R's Motion for Judgment on the Pleadings (**d.e. 33**) filed on August 23, 2018 and BPPR's Motion to Dismiss filed on April 20, 2016 (**d.e. 10** of Civil No. 15-3176). Having considered FDIC-R's motion, Cruz Oquendo's Opposition (d.e. 39), BPPR's dismissal motion, Cruz Oquendo's Opposition (d.e. 15 of Civil No. 15-3176), and BPPR's June 29, 2016 Reply (d.e. 25 of Civil No. 15-3176), the FDIC-R's and BPPR's motions are GRANTED for the reasons set forth herein.

I.     **LEGAL STANDARD**

   A.     **Fed. R. Civ. P. 12(b)(6) and 12(c)**

"After the pleadings are closed - but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard of review of a motion for judgment on the pleadings is the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must allege a plausible entitlement to relief." *FDIC v. Arrillaga-Torrens*, 212 F. Supp. 3d 312 (D.P.R. 2016) (*citing Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 96 (1st Cir. 2014)). We review both of Cruz Oquendo's complaints to determine whether they contain sufficient factual allegations to state claims that are plausible on their face.

CIVIL 15-1598CCC (consolidated    3
with Civil 15-3176CCC)

### B. The Federal Deposit Insurance Act, 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A)

In setting forth the requirements to assert a claim against FDIC as receiver, 12 U.S.C. § 1823(e) states that "[n]o agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under . . . section 1821 . . shall be valid against the Corporation unless such agreement (A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution. Section 1821(d)(9)(A) in turn states that "any agreement which does not meet the requirements set forth in section 1823(e) . . . shall not form the basis of, or substantially comprise, a claim against the" FDIC.

### C. The Truth in Lending Act ("TILA")

Section 1635(f) of TILA provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . ." Section 1640(a) in turn creates a private right of action for damages against "any creditor who fails to comply with any requirement imposed . . . with respect to any person." *Id*. The claim for damages must be brought "within one year from the date of the occurrence of the violation" or in the case of high-cost mortgages under Section 1602(bb), "before the end of the 3-year period beginning on the date of the occurrence of the violation." *Id.*

CIVIL 15-1598CCC (consolidated with Civil 15-3176CCC)  4

## II.   DISCUSSION

### A.   Fraud under Puerto Rico law

#### 1.   <u>Against FDIC-R</u>

The complaint filed before the Superior Court of Puerto Rico states that in February 2007, Cruz Oquendo informed Doral of wanting "to refinance her property at a lower interest rate, because she was going to opt for Retirement as a government employee." (d.e. 9-1 at ¶¶ 9, 10). She represents that Doral subsequently informed her "that the Bank approved the $357,600.00 loan at an interest rate of 5.87% over thirty years and the monthly payment would be $1,924.49, summoning her to close on the mortgage on March 31, 2007, at 4:00 p.m." *Id*. at ¶ 13. According to Cruz Oquendo, after she obtained the amortization table for her loan in 2008 she then realized that Doral had not given her "the mortgage product she requested and that she had been deceived." *Id*. at ¶ 17; *see also id*. at ¶ 18. She claims that Doral "never informed or explained . . . that after 15 years her monthly payment would be modified and increased to $3,167.28 monthly." *Id*. at ¶ 20. Cruz Oquendo claims that Doral "failed to comply with the[] duty to inform [her] about the scope and consequences of the mortgage product offered" and that Doral "deceived the plaintiff when they offered her a mortgage refinancing product that was completely different from what she had requested and that **if she had been aware of this she would not have accepted same**." *Id.* at ¶¶ 21, 23 (emphasis ours).

Cruz Oquendo realleges many of these statements in the complaint filed on December 31, 2015 (d.e. 1 at Civil No. 15-3176, ¶¶ 6-8). She adds that Doral "did not properly explain to [her] the extent and **details of the mortgage**

CIVIL 15-1598CCC (consolidated   5
with Civil 15-3176CCC)

**instrument she had been enticed into**," that Doral "withheld vital information, i.e., that the mortgage did not pay principal for 15 years that its rates would change after 15 years," and that "[t]his constitutes fraud since Doral . . . had specialized knowledge of the instrument that plaintiff did not have and **if known by her, she would not have entered into the loan**." *Id*. at ¶ 10 (emphasis ours). In listing her "Causes of Action," Cruz Oquendo charges that Doral "**committed fraud against plaintiff by withholding information that was vital for her to give her consent** to the mortgage she took" and demands that "the transaction [] be rescinded and the previous mortgage reinstated." *Id*. at ¶ 15 (emphasis ours).

FDIC-R counters that Cruz Oquendo's claims are barred by Sections 1823(e) and 1821(d)(9)(A). It describes her fraud claim under Puerto Rico law as fraud in the inducement, which the Supreme Court held does not preclude the FDIC's assertion of Section 1823(e). *See Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 93-94, 108 S. Ct. 396, 402, 98 L. Ed. 2d 340 (1987). Cruz Oquendo refutes this description of the fraud alleged. She instead avers that Doral committed "fraud in the factum," which would preclude FDIC-R from invoking Section 1823(e). *See* d.e. 39 at ¶ 4. Cruz Oquendo argues that even if Doral's fraud could be described as fraud in the inducement, 31 L.P.R.A. § 3404 nullifies contracts executed by deceit. *See id*. at ¶ 16. She reasons that FDIC would not be able to assert Section 1823 to shield itself from claims related to a contract that was "null *ab initio*." *See id*. at ¶ 18.

Cruz Oquendo's allegations place her fraud claim squarely within "fraud in the inducement", not "fraud in the factum." "Fraud in the factum occurs when a party is tricked into signing an instrument without knowledge of its true nature

CIVIL 15-1598CCC (consolidated            6
with Civil 15-3176CCC)

or contents. Thus, to constitute fraud in the factum a misrepresentation must go to the essential character of the document signed, not merely to its terms. For example, if a person signs a contract, having been led to believe that it is only a receipt, the stage may be set for the emergence of fraud in the factum." *Vasapolli v. Rostoff*, 39 F.3d 27, 35 (1st Cir. 1994) (*referring to Langley* at 93, 108 S.Ct. at 402 and *In re 604 Columbus Ave. Realty Tr.*, 968 F.2d 1332, 1346-47 (1st Cir. 1992) (citing other cases)).  The allegations in both of Cruz Oquendo's complaints are that she signed an agreement with different terms than those she agreed to but understood the nature of the contract she executed, i.e., she knew that it was an agreement to refinance her mortgage loan.  Where a party misrepresents the terms of an agreement in order to obtain another's consent, (s)he commits fraud in the inducement. *See 604 Columbus*, 968 F.2d at 1346 (stating: "[i]n *Langley*, the Court distinguished between the real defense of fraud in the factum, which renders a loan agreement entirely void and takes the agreement out of § 1823(e), and a defense of fraud in the inducement, which renders the loan agreement voidable but does not preclude FDIC's assertion of § 1823(e).  After reviewing the claim by the note makers that **their participation in a land transaction had been procured by misrepresentations as to the size and character of the property involved, the Court concluded that the note makers' argument was a claim of fraud in the inducement**.  Accordingly, the Court found that the FDIC could properly invoke § 1823(e) to bar the assertion by the note makers of their fraud defense.") (emphasis ours).

Regarding Cruz Oquendo's alternate argument that Section 1823(e) is inapplicable because consent was given under deceit as contemplated in

CIVIL 15-1598CCC (consolidated       7
with Civil 15-3176CCC)

31 L.P.R.A § 3404, we note that deceit does not necessarily nullify the contract. "In order that deceit may give rise to the nullity of a contract, it must be serious, and must not have been employed by both of the contracting parties. Incidental deceit renders the party who employed it liable to indemnify for losses and damages only." 31 L.P.R.A. § 3409. Serious deceit entails deliberate misrepresentations. *See e.g. Orlando Pérez Rosa, Recurrida vs. Ana Morales Rosado, et al., Peticionarios,* 172 D.P.R. 216, 230, 2007 PR Sup. LEXIS 165, *20-21, 2007 TSPR 171 (nullifying contract where broker deliberately hid apartment had a serious problem with leaks). Cruz Oquendo alleges in her complaints that Doral deceived her by withholding information and failing to explain the terms of the mortgage. *See* d.e. 9-1 at ¶¶ 15, 20, 21 and d.e. 1 of Civil No. 15-3176 at ¶¶ 7, 10. There is no allegation that Doral deliberately misrepresented the terms of the loan to her. She fails to sufficiently plead serious deceit under 31 L.P.R.A. § 3409, requiring the nullification of her mortgage agreement.

We therefore find that Cruz Oquendo's fraud claim against FDIC is precluded by 12 U.S.C. § 1823(e).

### 2. Against BPPR

BPPR moves to dismiss the complaint in Civil No. 15-3176 based on its having acquired Cruz Oquendo's loan, without assuming liabilities related to Doral's pre-receivership acts or omissions. A review of the relevant contractual provisions of the Purchase and Assumption Agreement ("P&A Agreement") (d.e. 10-1 of Civil No. 15-3176) clearly supports BPPR's position.

Nowhere in Section 2.1 of the P&A Agreement does it state that BPPR assumed liabilities related to potential wrongdoing by Doral, or liability for

CIVIL 15-1598CCC (consolidated with Civil 15-3176CCC)    8

pending litigation at the time the P&A Agreement was executed nor liability for rescission requests under TILA.  *See* d.e. 10-1 of Civil No. 15-3176 at pp. 11-12.  Cruz Oquendo responds by pointing to subsection (j) of the P&A Agreement, stating that BPPR assumed "liabilities, if any, for Commitments with respect to Loans that are purchased pursuant to this Agreement," and states that "BPPR is liable for Commitment with respect to the loan it made to plaintiff."  *See* d.e. 15 of Civil No. 15-3176 at ¶¶ 6-7.  But "Commitment" is defined in Section 1.3 of the P&A Agreement as "unfunded portion of a line of credit or other commitment reflected on the Failed Bank Records to make an extension of credit (or additional advances with respect to a Loan) that was legally binding on the Failed Bank as of the Bank Closing Date."  d.e. 10-1 of Civil No. 15-3176 at p. 3.  There is no dispute that Doral disbursed to Cruz Oquendo the funds secured by the mortgage loan on March 31, 2017, the date the agreement was executed.  Therefore, Doral has no "Commitment" of unfunded credit to Cruz Oquendo when the FDIC stepped in as receiver.

Because BPPR did not assume liabilities related to potential wrongdoing by Doral at the time of the P&A Agreement, plaintiff's claim against BPPR for Doral's purported fraud is dismissed.

  **B. Rescission and Damages under the Truth in Lending Act ("TILA")**

Cruz Oquendo claims that the FDIC and BPPR are both liable for Doral's violation of TILA, to wit, its failure to provide her with the "Federal Truth in Lending Disclosure Statement" or the "Good Faith Estimate.  *See* d.e. 1 of Civil No. 15-3176 at ¶ 17.  She claims this failure requires the rescission of her mortgage loan.  *Id*.  Although "TILA states that any consumer with the right to rescind 'may rescind the transaction as against any assignee of the

CIVIL 15-1598CCC (consolidated with Civil 15-3176CCC)    9

obligation'," (*referring to* 15 U.S.C. § 1641(c)) and "'[a]ny assignee' includes governmental agencies, such as the FDIC, that step into the shoes of a failed bank by operation of law . . . rescission against the FDIC is still impossible in the present case." *King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 246 (D. Mass. 2009). This is so because "[r]escission is the unmaking of a transaction **between parties to that transaction**. Pursuant to the P & A Agreement [between FDIC and BPPR], however, [BPPR] has replaced the FDIC as the party to the loan transaction." *Id*. (emphasis ours). Hence, although "the FDIC was an 'assignee' when it first became Receiver of [Doral] and acquired all rights and assets of [Doral] by operation of law. It is [] no longer an 'assignee' because the rights in the promissory note and mortgage deed have been transferred to [BPPR], pursuant to the P & A Agreement. Since it no longer holds any rights in the promissory note or mortgage deed, the FDIC no longer fits the description of 'assignee' or 'any assignee.' [Cruz Oquendo]'s rescission remedy, if any, must be invoked against the current assignee, [BPPR]." *Id*. at pp. 46-47. Because the FDIC and BPPR entered a Purchase and Assumption Agreement, Cruz Oquendo cannot rescind the mortgage agreement under TILA against the FDIC.

Furthermore, Cruz Oquendo alleged for the first time that Doral violated TILA in her December 31, 2015 complaint filed in this Court in Civil Case No. 15-3176. There is no reference to the federal statute in the March 30, **2009** complaint filed in the Superior Court of Puerto Rico. Section 1635(f) limits the right of rescission to three years after the credit is extended. *See McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 211 (1st Cir. 2012) *see also In re Sheedy*, 801 F.3d 12, 19-20 (1st Cir. 2015).

CIVIL 15-1598CCC (consolidated with Civil 15-3176CCC)   10

There is no dispute that Cruz Oquendo executed the mortgage agreement with Doral on March 31, 2007. Her rescission claim under TILA is time-barred. Any potential claim for damages she could have brought against the failed bank under Section 1640 is also time-barred. She can no longer claim damages for TILA violations from BPPR or the FDIC.

## III.   CONCLUSION

For the reasons stated, FDIC's Motion on the Pleadings (**d.e. 33**) and BPPR's Motion to Dismiss (**d.e. 10** of Civil Case No. 15-3176) are both GRANTED.

SO ORDERED.

At San Juan, Puerto Rico, on January 28, 2019.

S/CARMEN CONSUELO CEREZO
United States District Judge